UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -x
                                :

UNITED STATES OF AMERICA

                                :       **MEMORANDUM DECISION**

     - against -

                                :       06 Civ. 2243 (DC)

JIN CHEN,                            03 Cr. 567 (DC)

                                :

            Defendant.

                                :

- - - - - - - - - - - - - - - - - - -x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/6/06

**APPEARANCES:**    JIN CHEN
                Pro Se Defendant
                Federal Correctional Institution
                P.O. Box 300
                Ray Brook, NY   12977

                MICHAEL GARCIA, ESQ.
                United States Attorney for the
                      Southern District of New York
                      By:  Leslie Brown, Esq.
                           Assistant United States Attorney
                One Saint Andrew's Plaza
                New York, New York   10007

**CHIN, D.J.**

      Pro se defendant Jin Chen moves pursuant to 28 U.S.C. §

2255 to vacate, set aside, or correct his sentence on a variety

of grounds.  For the reasons set forth below, the motion is

denied.[1]

_____

[1]    Because I find that "it plainly appears from the
[section 2255] motion . . . and the record of prior proceedings
that [Chen] is not entitled to relief," I do not order the United
States Attorney to file an answer to the instant motion.  See
Rules Governing Section 2255 Proceedings for the U.S. Dist.
Courts 4(b); Armienti v. United States, 234 F.3d 820, 822-23 (2d
Cir. 2000).

## BACKGROUND

### A.    The Facts

Chen appeared before me on February 25, 2004, and pled guilty to the following:

In December 2000 and January 2001, Chen, along with several others, planned and executed two separate robberies, one in New Jersey and one in Arizona.  (Plea Tr. at 14-18).[2]  First, in December 2000, Chen and others robbed a home in New Jersey, where they knew there would be money from a "snake head" -- i.e., someone involved in the business of smuggling aliens from China into the United States.  (Id. at 14-15).  Chen admitted to using a firearm during this robbery, and admitted that he and his co-conspirators had agreed to use force or the threat of force. (Id. at 15-16).

Second, on or around January 15, 2001, Chen and others robbed a home in Phoenix, Arizona, where they knew there would be money from a local restaurant business.  (Id. at 17).  Chen admitted that he and his co-conspirators had agreed to use force or the threat of force during this robbery as well.  (Id.).

### B.    Prior Proceedings

Chen was indicted on May 7, 2003.  On February 25, 2004, Chen entered into a plea agreement (the "Agreement") with

---

[2]    References to "Plea Tr." are to the transcript of the guilty plea allocution on February 25, 2004.  References to "Sent. Tr." are to the transcript of the sentencing on March 28, 2005.

the Government.  (Agreement at 1).  The Agreement provided that

Chen would plead guilty to two counts of conspiracy to commit

robbery in violation of 18 U.S.C. § 1951, and one count of

brandishing a firearm during and in relation to a crime of

violence in violation of 18 U.S.C. § 924(c).  (Id.).  Chen and

the Government stipulated to an offense level of 25, a criminal

history category of II, and a sentencing range of 147 to 162

months imprisonment.  (Id. at 4-5).  The Agreement provided that:

> It is . . . agreed [] that the defendant will
> not file a direct appeal from, nor litigate
> under Title 28, United States Code, Section
> 2255 and/or Section 2241, any sentence within
> or below the Stipulated Sentencing Guidelines
> Range set forth above (147 to 162 months).

(Id. at 6-7).

On February 25, 2004, Chen appeared before this Court

represented by retained counsel, and with the assistance of an

interpreter, he proceeded to plead guilty pursuant to the terms

of the Agreement.  I discussed with defendant whether he fully

understood the Agreement, and whether he was voluntarily entering

into it.  The discussion included, for example, the following:

> THE COURT:  Have you had a full opportunity
> to discuss your case with Mr. Labush and to
> discuss the consequences of entering a plea
> of guilty?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: Are you satisfied with Mr. Labush
> and his representation of you?
>
> THE DEFENDANT:  Yes, I am satisfied.
>
> . . .

THE COURT: I'm going to review with you now the maximum possible penalties.  Counts one and 18 are the robbery conspiracy counts, they each carry a maximum sentence of 20 years imprisonment . . . Do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: Count two is the gun count, it carries a maximum sentence of life imprisonment, a mandatory minimum term of seven years imprisonment, which must run consecutively to any sentence imposed on count one . . . Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now do you understand that if you are convicted on all three counts, as a theoretical matter you could receive as much as 40 years imprisonment on counts one and 18, you could receive as much as life on count two, and at a minimum I would have to sentence you to seven years imprisonment on count two to run following any sentence that I impose on count one.  Do you understand that?

THE DEFENDANT: Yes.

(Plea Tr. at 4, 8-9).

Following the guilty plea, the probation department prepared a presentence report (the "PSR") containing a calculation of the appropriate sentence under the sentencing guidelines.  The probation department determined that the offense level stipulated to by the parties in the Agreement did not accurately reflect the facts of the case.  (PSR at 21; Sent. Tr. at 3).  The PSR recommended an additional 1-level increase with respect to count 18 because "two handguns were taken during the course of the offense."  (PSR at 20).

The probation department calculated the final offense level by taking the count with the highest offense level -- here, count 18 had an offense level of 28 -- and increasing that level pursuant to § 3D1.4.  (Id.).  The other counts added up to a total of 1 1/2 units, which added one offense level, resulting in an adjusted level of 29.  (Id.).  The PSR adjusted the final offense level 3 levels downward for acceptance of responsibility. (Id.).  Accordingly, the final offense level was 26, one level above the stipulated offense level of 25.  (Id. at 21; Agreement at 5).

The probation department therefore recommended that the Court apply a guideline range of 154-171 months, rather than 147- 162 months, and impose a sentence of 154 months imprisonment. (PSR at 31).  The 154 months was to be comprised of 70 months for counts 1 and 18, concurrently, followed by 84 months for count 2, to be served consecutively.  (Id.).

On March 4, 2005, the parties appeared before me to discuss a potential conflict of interest that defendant's attorney might face.  The courtroom was closed to the public, and the hearing was sealed in the interests of justice.  During that hearing, I explained to defendant that his attorney was facing a potential conflict of interest, and that he was entitled to be represented by counsel free of any potential conflict of interest.  I further explained that if he wanted new counsel but could not afford new counsel, I would appoint new counsel for defendant -- free of cost.  Defendant responded that he fully

understood the potential conflict of interest his attorney was

facing, and that he wished to continue with him as his attorney.

I allowed defendant's attorney to remain on the case.  One

consideration was that Chen had retained his lawyer and the

lawyer had represented Chen in a prior case.  I had also

appointed independent counsel to advise Chen regarding the

potential conflict, and Chen had an opportunity to speak with

him.[3]

On March 28, 2005, I sentenced Chen.  Defense counsel

objected to the one point adjustment for the recovery of weapons

recommended in the PSR.  (Sent. Tr. at 3).  The Government took

the position that it would "stand by the plea agreement that [it

had] with the defendant" and declined to argue for the increased

sentencing range of 154-171 months.  (Id.).  I sustained the

defendant's objection and concluded that the guideline range was

147-162 months.  (Id. at 3, 5).  I subsequently sentenced Chen to

147 months imprisonment, the bottom of the range.  (Id. at 9).

Chen did not appeal.  On March 15, 2006, Chen filed the

present motion.[4]

---

[3]     The proceedings were transcribed and the transcript has
been filed under seal.

[4]     The motion is timely.  "A motion by a federal prisoner
for postconviction relief under 28 U.S.C. § 2255 is subject to a
one-year time limitation that generally runs from the date on
which the judgment of conviction becomes final."  Clay v. United
States, 537 U.S. 522, 524 (2003) (quoting 28 U.S.C. § 2255)
(internal quotations omitted).  When there is no appeal,
conviction becomes final ten days after entry of judgment in the
district court.  See Moshier v. United States, 402 F.3d 116, 118
(2d Cir. 2005) ("[F]or purposes of § 2255 motions, an unappealed
federal criminal judgment becomes final when the time for filing

## DISCUSSION

Chen moves to vacate, set aside, or correct his sentence, arguing, <u>inter</u> <u>alia</u>, that: (1) he was denied the right to appeal his sentence; (2) he was unlawfully sentenced for participating in two conspiracies when they were really one; (3) his sentence was unlawfully enhanced under the United States Sentencing Guidelines; (4) he was unlawfully sentenced for participating in a crime of violence; (5) he was unlawfully charged and convicted of a federal crime; (6) he was denied effective assistance of counsel; and (7) he was denied the right to choice of counsel.

The motion is denied.  First, the motion is procedurally barred because Chen waived his right to appeal or otherwise challenge his sentence.  Second, even if the petition were not procedurally barred, the petition nevertheless fails because Chen's arguments are without merit.  I discuss them in turn.

## A.   Waiver of Right to File a § 2255 Motion

### 1.   Applicable Law

The Second Circuit has held that "[i]n no circumstance . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence

---

a direct appeal expires."); Fed. R. App. P. 4.  Here, this motion
was filed March 15, 2006, within one year after the conviction
became final.

conforming to the agreement."  United States v. Salcido-

Contreras, 990 F.2d 51, 53 (2d Cir. 1993).

        A waiver of appeal does not, however, "foreclose an

attack on the validity of the process by which the waiver has

been produced," such as a plea agreement.  Frederick v. Warden,

Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002)

(citation omitted).  Accordingly, the district court "does not

automatically enforce § 2255 waivers in the face of

ineffectiveness of counsel, as such claims may call into question

the very legitimacy of the § 2255 waivers."  Mendez v. United

States, No. 01 Civ. 2924 (RMB), 2002 WL 226693, at *2 (S.D.N.Y.

Feb. 13, 2002) (quotation omitted).

        To show that a plea agreement is invalid due to

ineffectiveness of counsel, a defendant must first establish that

"counsel's representation fell below an objective standard of

reasonableness."  Strickland v. Washington, 466 U.S. 668, 688

(1984).  Second, a defendant must show that "there is a

reasonable probability that, but for counsel's errors, he would

not have pleaded guilty and would have insisted on going to

trial."  United States v. Hernandez, 242 F.3d 110, 112 (2d Cir.

2001) (internal citations omitted).

        On the other hand, a guilty plea is valid if it

"represent[s] a voluntary and intelligent choice among the

alternative courses of action open to the defendant."  Ventura v.

Meachum, 957 F.2d 1048, 1058 (2d Cir. 1992).

## 2.   **Application**

Here, Chen's § 2255 motion to vacate or correct his sentence is procedurally barred because he waived his right to such a challenge.  In the Agreement, Chen agreed that he would "not file a direct appeal from, nor litigate under Title 28, United States Code, Section 2255 . . . any sentence within or below the Stipulated Sentencing Guidelines Range set forth above (147 to 162 months)."  (Plea Agreement at 6-7).

The sentence he received was within -- indeed was at the bottom of -- the stipulated range, as I sentenced him to 147 months imprisonment.  Thus, based on the plain terms of the Agreement, Chen's § 2255 motion is barred.

Moreover, Chen does not attack the validity of the plea process, see Frederick, 308 F.3d at 195 (waiver of appeal valid unless attacking validity of process, i.e., plea agreement), nor does he suggest that his waiver of appeal was involuntary, see Ventura, 957 F.2d at 1058 (plea valid where it represents a voluntary, intelligent choice by defendant).  In his plea allocution, Chen stated under oath that he understood that he was waiving his right to challenge "any sentence within or below the stipulated range of 147 to 162 months," and that he would have "no right to appeal or otherwise try to challenge" any sentence within or below that range.  (Plea Tr. at 12).

He further represented that (1) he was satisfied with his counsel and his counsel's representation of him (id. at 4); (2) he had a full opportunity to discuss the consequences of

-9-

entering a plea of guilty with his counsel (id.); (3) he
understood the charges in the indictment and the minimum and
maximum sentences he could receive (id. at 8-11); (4) he fully
understood the letter plea agreement before he signed it (id. at
12); and (5) the letter plea agreement constituted his complete
and total understanding of the entire agreement among the
Government, his attorney, and himself (id. at 13).

Although Chen does assert an ineffective assistance
claim, for the reasons discussed below, the ineffective
assistance claim is meritless.  Chen has not shown that counsel
made any errors or that, even assuming he did, there is a
reasonable probability that he would not have pled guilty had the
errors not been made.

Consequently, I find that the Agreement is valid.
Because I sentenced Chen to a term within the stipulated range,
he has waived his right to challenge his sentence.

**B.   The Merits**

Even if Chen had not waived the right to challenge his
sentence, the motion would be denied on the merits.

**1.   Denial of Right to Appeal**

Chen argues that he was denied the right to appeal his
sentence, a recognized statutory right "arguably protected by the
due process clause."  (Chen Affidavit (hereinafter "Aff.") at 4).
To support his argument, Chen cites Roe v. Flores-Ortega, 528
U.S. 470 (2000), for the proposition that where trial counsel
refuses to perfect an appeal as requested by the convicted

defendant, the defendant is entitled to relief.  (Chen Aff. at

6).  Chen's actual argument, then, is that trial counsel acted

ineffectively by failing to file a notice of appeal.  Chen

alleges that he asked counsel to file an appeal and that counsel

did not do so.  Nonetheless, this argument fails because Chen

does not make a sufficient showing under the standard set out in

Flores-Ortega.

In Flores-Ortega, the Supreme Court held that a

defendant claiming ineffective counsel must show (1) that

counsel's representation fell below an objective standard of

reasonableness, and (2) that counsel's deficient performance

prejudiced the defendant.  528 U.S. at 476-77.

Where the situation involves failure to file a notice

of appeal, a slightly modified test is applied within the

framework set out above.  First, with respect to reasonableness,

counsel has a "duty to consult with the defendant about an appeal

when there is reason to think either (1) that a rational

defendant would want to appeal (for example, because there are

nonfrivolous grounds for appeal), or (2) that this particular

defendant reasonably demonstrated to counsel that he was

interested in appealing."  Flores-Ortega, 528 U.S. at 480;

Sarroca v. United States, 250 F.3d 785, 787 (2d Cir. 2001).

Second, with respect to prejudice, a defendant must demonstrate

that "but for counsel's deficient failure to consult with him

about an appeal, he would have timely appealed."  Sarroca, 250

F.3d at 787 (emphasis in original).  Moreover, in determining

whether a reasonable defendant would have appealed, the Court

observed that:

> Although not determinative, a highly relevant
> factor in this inquiry will be whether the
> conviction follows a trial or a guilty plea,
> both because a guilty plea reduces the scope
> of potentially appealable issues and because
> such a plea may indicate that the defendant
> seeks an end to judicial proceedings.  Even
> in cases when the defendant pleads guilty,
> the court must consider such factors as
> whether the defendant received the sentence
> bargained for as part of the plea and whether
> the plea expressly reserved or waived some or
> all appeal rights.  Only by considering all
> relevant factors in a given case can a court
> properly determine whether a . . . particular
> defendant sufficiently demonstrated to
> counsel an interest in an appeal.

Flores-Ortega, 528 U.S. at 480.

In setting forth the following test, the Flores-Ortega

Court specifically rejected "a bright-line rule that counsel must

always consult with the defendant regarding an appeal." Id.  The

touchstone of this inquiry, then, is whether counsel's actions

were reasonable.  Id. at 481 ("The relevant question is not

whether counsel's choices were strategic, but whether they were

reasonable.").

Here, even assuming Chen asked his attorney to file an

appeal, I conclude that his counsel nevertheless acted reasonably

by not doing so because Chen's attorney had already consulted

with Chen about whether such an appeal should be filed prior to

Chen's guilty plea.  Specifically, both Chen and his attorney

stated on the record that they had fully discussed the plea

agreement, and Chen acknowledged that, as part of the plea

agreement, he was waiving his right to appeal.  (See Plea Tr. at 6, 13-14).  Thus, the harm that Flores-Ortega sought to avoid -- i.e., where counsel does not consult with defendant about appealing -- is not at issue here, where his attorney had already consulted with him about his right to appeal in the context of his guilty plea.  The fact that Chen later changed his mind does not negate the fact that he and his attorney had previously discussed the merits of an appeal, and had decided that it was best to plead guilty and to waive his right to appeal.

In addition, as the Flores-Ortega Court observed, other highly relevant considerations in determining whether counsel acted reasonably in deciding not to appeal include "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."  528 U.S. at 480.  Here, Chen clearly received the sentence bargained for in his plea agreement, as he was sentenced to the bottom of the stipulated guidelines range.  He also explicitly waived his right to file a § 2255 petition challenging his sentence.  Moreover, there simply were no meritorious issues that could have been raised on appeal in good faith.  Thus, under these circumstances -- where the defendant pled guilty (thus indicating his desire to end the judicial proceedings), waived his right to appeal, and was sentenced to a term at the lowest end of the stipulated range -- I conclude that Chen cannot show that counsel's failure to file a notice of appeal was objectively unreasonable.  See Olivares v. United

-13-

States, 05 Civ. 6094 (SHS), 2006 WL 2057188, at *4 (S.D.N.Y. July 24, 2006) (holding that counsel was not ineffective for failing to file a notice of appeal where defendant waived his right to appeal and was sentenced to the statutory minimum in accordance with his plea agreement).

### 2.   **Sentence For Two Charges of Conspiracy**

Chen argues that his sentence is unlawful because the base offense level incorrectly reflects involvement in two separate conspiracies.  (Petition (hereinafter "Pet.") at 6). According to Chen, because "[a]ll overt acts were in connection with the same common scheme and plan," the acts were "in furtherance of the same conspiracy."  (Id.).  Thus, "[t]his incorrect computation increased the base offense level" under which he was sentenced.  (Id.).

The argument fails.  First, Chen pled guilty to two separate counts of conspiracy under 18 U.S.C. § 1951.  In the plea agreement, he stipulated that there were two separate conspiracies.  He cannot now argue that there was only one.

Second, the facts show that Chen was involved in two separate conspiracies.  For example, one robbery took place in New Jersey while the other took place in Arizona, and the New Jersey robbery sought money from the proceeds of a "snakehead," while the Arizona robbery sought money from a restaurant business.  See, e.g., United States v. Macchia, 35 F.3d 662, 667 (2d Cir. 1994) (two conspiracies distinct where there were differences in operations and were relatively independent of each

-14-

other).   Although the two robberies were related, they were
separate crimes.

          Thus, there was nothing unlawful about sentencing Chen
based on two separate conspiracies.

> 3.    **Sentence Unlawfully Enhanced**

          Chen argues that his sentence was unlawfully enhanced
under the sentencing guidelines because the "conduct of
brandishing a firearm during and [in] relation to a crime of
violence" was wrongfully used to increase "the base offense level
and sentencing range."   (Pet. at 8).   According to Chen, the
Court improperly made this finding of fact, and then used this,
as well as other findings, to unlawfully enhance defendant's
sentence in violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466
(2000).   (Chen Aff. at 5, 9-10).

          Defendant's argument is easily rejected as the Court
did not make any findings of fact.   Rather, it was defendant who
admitted to brandishing a firearm during his plea allocution.
(Plea Tr. at 15-16) ("THE COURT: Did you carry or use a firearm
in connection with this robbery?   THE DEFENDANT: Yes.").   Thus,
the Court properly took the weapons charge into account when
sentencing Chen, as Chen pled guilty to this charge pursuant to
his plea agreement.

> 4.    **Sentence for Participating in a Crime of Violence**

          Chen argues that he was unlawfully sentenced for
participating in a crime of violence because he did not commit
any violent acts.   (Pet. at 9).   Chen argues that "no such

accusations were stated in the counts in the indictment to which
[he pled] guilty, and such a fact . . . was [not] admitted."
(Id.).

> This contention is without merit.  Chen pled guilty to
two counts of conspiracy to commit robbery in violation of 18
U.S.C. § 1951.  (Agreement at 1).  The statute covers robbery and
the use or threat of physical violence to interfere with
commerce.

> In the plea allocution, Chen admitted that he and
others agreed to take money by force or threat of force for both
the New Jersey and Arizona robberies.  (Plea Tr. at 16-17).
Therefore, he cannot now deny participating in a crime of
violence.

### 5.    **Charged and Convicted of a Federal Crime**

> Chen next seems to challenge whether his conduct is
subject to federal jurisdiction.  (Pet. at 9(a)).

> This contention is also without merit.  Again, Chen
pled guilty to 18 U.S.C. § 1951, a federal crime.  Under this
statute, one of the elements that the Government must prove at
trial is federal jurisdiction by involvement in interstate
commerce.  In the plea allocution, Chen was notified of the
Government's burden.  The Government stated: "with respect to
counts one and 18 . . . the government would have to prove at
trial beyond reasonable doubt . . . that interstate or foreign
commerce or an item moving in interstate or foreign commerce
would or have been delayed or obstructed in any way or degree."

(Plea Tr. at 7).   Chen waived his right to trial, and through his attorney, declined to contest the elements of interstate commerce.   (Id. at 6, 18).   Therefore, Chen cannot now argue that federal jurisdiction over this matter was not proper.

> **6.      Denial of Effective Assistance of Counsel**

Chen claims that he has been denied effective assistance of counsel throughout the judicial proceedings.   (Pet. at 9(a)).

To prevail on his claim of ineffective assistance of counsel, Chen must show that (1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) he was prejudiced by counsel's deficient performance.   See Strickland, 466 U.S. at 686-88.   When applying the Strickland test, "judicial scrutiny of counsel's performance must be highly deferential."   Id. At 689.   "The court's central concern is not with 'grad[ing] counsel's performance,' . . . but with discerning 'whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.'"   United States v. Aguirre, 912 F.2d 555, 561 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 696).

Chen has not met the standard set out under Strickland. First, defendant has not offered facts and examples that would enable the Court to determine that he received ineffective assistance of counsel.   In the plea allocution, Chen asserted

-17-

that he was satisfied with his attorney's representation of him
(Plea Tr. at 4), and that he and his attorney had fully discussed
the consequences of entering a guilty plea, as well as the terms
of the plea agreement.  (Id. at 4-13).

Second, even assuming that Chen could provide examples
of ineffective assistance, he still could not prevail on this
claim because he does not explain how he was prejudiced by
counsel's allegedly deficient performance -- especially here,
where defendant was sentenced near the very bottom of the
sentencing guidelines for the crimes which he pled guilty.

In sum, Chen's ineffective assistance claim falls well
short of the standard required under Strickland, as Chen fails to
satisfy either prong of the Strickland test.

### 7.    Denial of Right to Choice of Counsel

Finally, Chen claims that during the judicial
proceedings, he sought to change attorneys, but was denied this
right, and was "forced to proceed with current counsel."  (Pet.
at 9(a)).

This claim fails, as it is contradicted by the
transcript of the sealed hearing I had with the parties on March
4, 2005.  Specifically, in that hearing, I asked Chen if he
wanted me to appoint him a new lawyer -- free of cost -- because
of the potential conflict of interest that his attorney was
facing.  Chen declined, and expressed his desire to retain his
attorney.  It is therefore inaccurate for Chen to argue that he
was forced to proceed with his current counsel, since he was

-18-

given adequate time, including an opportunity to consult with indigent counsel as well as a recess during the hearing, to consider the Court's offer to provide new counsel.

## CONCLUSION

Accordingly, the motion for relief pursuant to 28 U.S.C. § 2255 is denied in all respects.  Because Chen has not made a substantial showing of the denial of a constitutional right, I decline to issue a certificate of appealability.  See 28 U.S.C § 2253(c).  I certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this decision would not be taken in good faith.

The Clerk of the Court shall close the case.

SO ORDERED

Dated: New York, New York
       October 6, 2006

DENNY CHIN
United States District Judge